IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>  )<br>  Plaintiff,  )<br>  )<br>v.  )<br>  )<br>ISAIAS FRANCO VALAZQUEZ,  )<br>  )<br>  Defendant.  ) | Case No. CR-09-218-C |

## MEMORANDUM OPINION AND ORDER

Defendant Valazquez is charged with possession of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). The Court recently heard testimony at a suppression hearing regarding two different motions filed by Defendant Valazquez.

### BACKGROUND

In the course of investigating a drug dealer known to them as "Jorge," Oklahoma City police officers became suspicious of a residence located at 6512 S. Indiana in Oklahoma City. On January 13, 2009, Officer Jeremy Harrison obtained a daytime search warrant around 9:25 p.m. authorizing a search of the residence for items related to the manufacture, sale, and consumption of methamphetamine. The search warrant was directed to "any Sheriff, Policeman, or Peace Officer in the County of Oklahoma," and permitted them to search the premises, "including the curtilage thereof and the appurtenances belonging thereto, including any vehicles associated with the above listed property." Upon obtaining the warrant, Officer Harrison telephoned Sergeant Mock to

inform him that a valid warrant had been issued.  Sergeant Mock, among others, then drove to the residence to serve the search warrant.  According to Sergeant Mock, they entered the home at approximately 9:54 p.m.  Officer Harrison did not arrive on the scene with a copy of the warrant until after the officers were inside the home.

Earlier in the day, officers had conducted surveillance of the residence, but they were not present immediately before the officers executed the warrant.  Sergeant Mock testified that, upon arriving at the residence, they saw a Ford Mustang parked in the driveway and the door to the single-car garage was closed.  Sergeant Mock did not observe any other vehicles arrive at the residence while the officers were present.  When the police entered the home, Defendant Angulo was inside the residence and Defendants Valazquez and Koutroulares were attempting to flee from the back door.  Both men were captured a few blocks from the residence.

Sergeant Mock testified that, during the search of the home, very little furniture was found.  There was a flat-screen television and a dining table in the living room and kitchen area.  In two bedrooms, officers found blow-up mattresses.  In one bedroom, there were sheets on the mattress and officers found clothes and a utilities receipt in Defendant Angulo's name for a different address.  In the garage, officers found a Dodge Caravan with a Nevada license plate.  The left front headlight had been completely removed from the vehicle and pulled from the mounting bracket and Sergeant Mock testified that it appeared that Defendants were in the process of removing the right headlight.  The screws to the

mounting bracket were found in Defendant Angulo's pocket. While searching the van, officers found a large amount of methamphetamine hidden in the compartment behind the headlight mounts. The contraband was wrapped in Saran wrap and was coated with axle grease.

While officers were searching the residence, Defendant Valazquez informed a patrolman present on the scene that he would like to speak with an officer. Officer Harrison, accompanied by Officer Jones of the bilingual unit, went to speak to Defendant Valazquez, who was seated in the back of a patrol car. Officer Harrison testified that he read Defendant Valazquez his <u>Miranda</u> rights in full, and then Officer Jones translated them to Spanish. Defendant Valazquez told the officers that he understood his rights and that he wished to speak to them. During the conversation, Officer Harrison would ask questions in English and Officer Jones would translate them into Spanish. The conversation lasted less than five minutes, during which time Defendant Valazquez informed the officers that he lived in Las Vegas, Nevada, and that the two other men were paying him to transport drugs to Oklahoma City. Defendant Valazquez stated that he rented the Dodge Caravan in Nevada, drove it to a body shop in Phoenix, Arizona, where the drugs were put into the vehicle, and then drove the van to the residence. Upon his arrival, Defendant Valazquez parked the van in the garage and the other two men began to disassemble it.

## DISCUSSION

**A. Reasonableness of Search**

Although not raised in his briefs, Defendant Valazquez asserted during the suppression hearing that the search was invalid because Sergeant Mock, who was not the affiant mentioned in the warrant, was not the proper officer to execute the warrant. Additionally, Defendant contends that it was improper because Sergeant Mock did not have a copy of the search warrant with him when he first entered the home. Instead, Officer Harrison, who arrived after the warrant was executed and officers were in the home, gave the warrant to Sergeant Mock to serve.

In support of his first argument, Defendant cites 22 Okla. Stat. § 1227, which states that "[a] search warrant may in all cases be served by any of the officers mentioned in its direction, but by no other person except in aid of the officer, on his requiring it, he being present, and acting in its execution." Defendant misunderstands the meaning of this provision. Here, the search warrant was directed "[t]o any Sheriff, Policeman, or Peace Officer in the County of Oklahoma." Accordingly, any one of those individuals had the authority to serve the warrant and conduct a search of the residence. The fact that Officer Harrison was not present until after the warrant was executed is unimportant, and the search was not therefore rendered invalid.

The Court also finds Defendant's second argument unavailing. Because this is a federal prosecution, the Court looks to federal law to determine whether the search was reasonable under the Fourth Amendment, even though state officers conducted the search pursuant to a state warrant. See United States v. Le, 173 F.3d 1258, 1264 (10th Cir. 1999).

According to the Supreme Court, the Fourth Amendment does not require that "the executing officer . . . serve the warrant on the owner before commencing the search" of a residence. Groh v. Ramirez, 540 U.S. 551, 562 n.5 (2004). Additionally, the Tenth Circuit recognizes that:

> requirements imposed by statute or court rule concerning the execution of search warrants, such as exhibiting a copy of the warrant at the premises, are considered ministerial and "are not deemed to flow so directly from the Fourth Amendment's proscription upon unreasonable searches that failure to abide by them compels exclusion of evidence obtained in execution of a search warrant."

United States v. Ritchie, 35 F.3d 1477, 1483 n.6 (10th Cir. 1994) (quoting 2 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 4:12 (4th ed.)). There is additional support for the proposition that officers advised that a search warrant has been issued need not have it with them at the beginning of the search, so long as it is delivered prior to their departure from the scene. United States v. Hepperle, 810 F.2d 836 (8th Cir. 1987); LaFave, Search and Seizure at § 4:12. Accordingly, the Court finds that the absence of the warrant in the hands of the initial searching officers poses no Fourth Amendment problems.

**B.  Validity of Search of Dodge Caravan**

First, Defendant argues that he has standing to contest the search of the Dodge Caravan because he rented it in Nevada.  The government disagrees, contending that there is no rental agreement or other document listing Defendant as the renter or authorized driver.

"To establish standing to challenge a car search, the defendant bears the burden of showing that he had a 'legitimate possessory interest in or [a] lawful control over the car.'" United States v. Valdez Hocker, 333 F.3d 1206, 1208-09 (10th Cir. 2003) (citation omitted).  The Tenth Circuit has listed the following factors that courts should consider: "'(1) whether the defendant asserted ownership over the items seized from the vehicle; (2) whether the defendant testified to his expectation of privacy at the suppression hearing; and (3) whether the defendant presented any testimony at the suppression hearing that he had a legitimate possessory interest in the vehicle." Id. at 1209 (quoting United States v. Allen, 235 F.3d 482, 489 (10th Cir. 2000)).  According to the Supreme Court, "one who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of this right to exclude." Rakas v. Ill., 439 U.S. 128, 143 n.12 (1978).

No rental agreement for the Dodge Caravan was ever produced.  The only fact of which the Court can be certain is that the van was traced back to Enterprise Rent-a-Car.  Such evidence is insufficient to demonstrate that Defendant had a legitimate possessory

interest in the vehicle. Accordingly, the Court finds that he does not have standing to contest its search.

Even if Defendant had standing, however, the search of the Dodge Caravan would still be valid. "A search warrant authorizing a search of a certain premises generally includes any vehicles located within its curtilage if the objects of the search might be located therein." United States v. Gottschalk, 915 F.2d 1459, 1461 (10th Cir. 1990). The Tenth Circuit "define[s] the scope of the warrant to include those automobiles either actually owned or under the control and dominion of the premises owner or, alternatively, those vehicles which appear, based on objectively reasonable indicia present at the time of the search, to be so controlled." Id.

In Gottschalk, the Court found the following factors important to its determination that the vehicle search was lawful: the car was on the premises at the start of the search, the vehicle was inoperable and it was reasonable to assume that the vehicle had been on the premises for a while and would likely remain there, the officers had reliable information that the vehicle was being used as a storage place by people within the residence; and the homeowner had physical access to the keys and could easily use the trunk or other compartments for hiding drugs or weapons. Id. at 1461-62. Additionally, the fact that the vehicle was found in the driveway of residential property would reasonably lead officers to assume that the vehicle was not there pursuant to a lease agreement. Id. at 1462 n.3.

Considering the totality of the circumstances surrounding the search at issue in this case, the Court finds that it was reasonable for the officers to conclude that the van was owned or controlled by the owner of the residence. Based on the evidence found in the only bedroom that appeared lived-in, it was reasonable for officers to conclude that Defendant Angulo owned or rented the property in question. The fact that the vehicle was found in the closed garage of the home, coupled with the fact that the headlights had been at least partially removed and screws from the mounting bracket were found in Defendant Angulo's pocket, would lead the officers to reasonably conclude that Defendant Angulo owned, or at least controlled, the van. Accordingly, the Court finds that the search did not violate the Fourth Amendment and the evidence found as a result will not be excluded at trial.

## C.  Suppression of Defendant's Statement[1]

Defendant contends that the Court should exclude evidence regarding the statement that he made to officers while at the residence. At the suppression hearing, Defendant testified that he was not read his <u>Miranda</u> rights in full and he did not understand what rights he was giving up as a result of speaking to Officers Harrison and Jones. Further,

---

[1] At the suppression hearing, some questions were asked about a later statement given to Officer Moses, who was not present to testify. Very few facts were given, however, and the Court is unaware of when and where the statement took place, what was said, and whether the statement will be used at trial. In Defendant's motion, he simply states that he gave a statement to police on January 13, 2009, not distinguishing between the two. Therefore, the Court is only capable of addressing the initial statement given to Officers Harrison and Jones, and this Order in no way concerns any other statements that may have been given.

Defendant stated that he did not remember ever being told that he had the right to remain silent, although he claims that the officers began to read him his rights.

On the contrary, Officer Harrison testified that, after being told that Defendant wished to speak to an officer, he went to the back of the police car where Defendant was being held. Officer Jones, a member of the department's bilingual unit and a fluent Spanish speaker, went with him to assist in translating. Officer Harrison testified that he read Defendant his Miranda rights in full in English and that, because Defendant spoke broken English, he nodded along and responded in parts. Then, Officer Jones read Defendant his rights in Spanish.[2] Officer Jones testified that Defendant nodded, appeared to understand his rights, and said "si" when asked if he understood. Both officers testified that Defendant did not appear to be under the influence at the time and they did not have their weapons drawn or act coercively in any manner.[3]

Defendants must be advised of their rights under Miranda whenever they are subjected to custodial interrogation. United States v. Hudson, 210 F.3d 1184, 1190 (10th Cir. 2000). Defendants may waive their Miranda rights so long as the waiver is "made voluntarily, knowingly and intelligently." Miranda v. Arizona, 384 U.S. 436, 444 (1966). In order for a waiver to be voluntary, it must have been "the product of a free and deliberate

---

[2] Officer Jones testified that, although he did not have available his card with the Miranda rights listed in Spanish, he translated the English version from the card used by Officer Harrison.

[3] Neither officer could remember whether Defendant was handcuffed during questioning, but the Court finds that this fact is not determinative of whether Defendant's statement was voluntary.

choice rather than intimidation, coercion, or deception." Moran v. Burbine, 475 U.S. 412, 421 (1986). In addition, it "must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Id. Courts are instructed to look at the totality of the circumstances surrounding the interrogation to determine whether a defendant's waiver was voluntary. Id. It is well established that the prosecution bears the burden of proving the voluntariness of a confession. See Mo. v. Seibert, 542 U.S. 600, 609 n.1 (2004).

In determining whether a particular confession was coerced, the Tenth Circuit states that factors to consider are: "'(1) the age, intelligence, and education of the defendant; (2) the length of the detention; (3) the length and nature of the questioning; (4) whether the defendant was advised of [his] constitutional rights; and (5) whether the defendant was subjected to physical punishment.'" United States v. Minjares-Alvarez, 264 F.3d 980, 985 (10th Cir. 2001) (citation omitted). However, "[n]o single factor is determinative," United States v. Benally, 146 F.3d 1232, 1240 (10th Cir. 1998), and courts must consider the totality of the circumstances in making a determination of voluntariness. Id.

After considering the totality of the circumstances surrounding Defendant's statement, the Court finds that it was voluntary. Although no witness could remember precisely how long Defendant had been under investigative detention at the time the interrogation began, Officer Harrison testified that the conversation lasted no more than five minutes. Both Officer Harrison and Officer Jones testified that Defendant was very

cooperative and wanted to speak to them. Further, they both testified that he was read his <u>Miranda</u> rights in full in both English and Spanish. While Defendant testified to the contrary, the Court finds his testimony unpersuasive due to inconsistencies in his version of events. Accordingly, the Court finds that Defendant's statement was voluntary and may therefore be used at trial.

## CONCLUSION

Accordingly, Defendant's Motion to Suppress (Dkt. No. 33) and Motion to Suppress Statement (Dkt. No. 36) are both DENIED.

IT IS SO ORDERED this 3rd day of September, 2009.

*[signature]*

ROBIN J. CAUTHRON
United States District Judge